1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No. 2:19-cr-00155-DJC

12                Plaintiff,

13        v.                                ORDER

14   JASON RAYSEAN BROADBENT,

15                Defendant.

16

17        Defendant Jason Raysean Broadbent was arrested in 2015 and charged with,

18   among other crimes, being a felon in possession of firearms under 18 U.S.C.

19   § 922(g)(1) (Counts Ten and Eleven) and possessing unregistered short-barreled

20   machineguns under 26 U.S.C. § 5861(d) (Counts Thirteen and Fourteen).  (Indictment

21   (ECF No. 1).)  Defendant now moves to dismiss Counts Ten, Eleven, Thirteen, and

22   Fourteen pursuant to *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct.

23   2111 (2022).  (Mot. (ECF. No. 55) at 1.)

24        For the reasons stated below, this Motion is DENIED.

25   I.      **Background**

26        Defendant Jason Broadbent was arrested on November 19, 2015 for

27   possession with intent to distribute methamphetamine, possession of unregistered

28   weapons, and for being a felon in possession of firearms.  (Indictment at 1–2.)  While

officers were executing a search warrant on the home of his girlfriend, Defendant, who was asleep in the bedroom, woke up and shot a firearm through the wall.  (Mot. at 2.) He then proceeded to run out of the house and into the backyard, and allegedly pointed a gun at officers while scaling a fence.  (Id.)

On September 5, 2019, the United States brought charges against Defendant for assault on a police officer (Counts One and Two), discharging a firearm during and in relation to a crime of violence (Count Three), brandishing a firearm during and in relation to a crime of violence (Count Four), possession with intent to distribute methamphetamine near a school (Count Five), possession with intent to distribute methamphetamine  where children are present (Count Six), possession of a firearm in furtherance of a drug trafficking crime (Count Seven), possession with intent to distribute methamphetamine (Count Eight), possession of a firearm in furtherance of a drug trafficking crime (Count Nine), being a felon in possession of firearms (Counts Ten and Eleven), possession of an unregistered destructive device (Count Twelve), and possession of unregistered short-barreled machine guns (Counts Thirteen and Fourteen).  (Indictment at 1.)

Defendant now moves the Court to dismiss Counts Ten, Eleven, Thirteen, and Fourteen.  (Mot.)  The Government has opposed the Motion (Opp'n to Mot. to Dismiss 10, 11, 13 and 14 (ECF No. 64).)  Oral argument was heard on the Motion on October 5, 2023 with Mia Crager and Jerome Price appearing for Defendant, and David W. Spencer and Justin Lee appearing for the Government.

## II.     Second Amendment Jurisprudence

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).  At the core of this guarantee is the right to keep and bear arms for the purpose of self-defense both inside and outside the home.  *Id.* at 630; *Bruen*, 142 S. Ct. at 2122.  The Supreme Court has noted, however, that right "is not unlimited." *Heller*, 554 U.S. at 626.  Instead, it is tempered by "presumptively lawful regulatory

1  measures," including but not limited to "longstanding prohibitions on the possession

2  of firearms by felons." *Id.* at 626–27 n.26.

3       In *Bruen*, the Supreme Court held, "consistent with *Heller* and *McDonald*, that

4  the Second and Fourteenth Amendments protect an individual's right to carry a

5  handgun for self-defense outside the home," *Bruen*, 142 S. Ct. at 2122, but "decline[d]

6  to adopt [the] two-part approach" many federal courts of appeals, including the Ninth

7  Circuit, adopted following *Heller* to analyze Second Amendment challenges under

8  which courts considered both history and "means-end scrutiny."[1] *Id.* at 2125–26; *see,*

9  *e.g.*, *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).  In rejecting the

10 two-step approach, the Supreme Court observed that while "[s]tep one of the

11 predominant framework is broadly consistent with *Heller*, which demands a test

12 rooted in the Second Amendment's text, as informed by history," "*Heller* and

13 *McDonald* do not support applying means-end scrutiny in the Second Amendment

14 context." *Bruen*, 142 S. Ct. at 2127.  Thus, the Supreme Court set forth the new

15 historical test: "When the Second Amendment's plain text covers an individual's

16 conduct, the Constitution presumptively protects that conduct.  The government must

17 then justify its regulation by demonstrating that it is consistent with the Nation's

18 historical tradition of firearm regulation." *Id.* at 2129–30.

19   **III.   Analysis**

20       **A.  Felon in Possession Law**

21       Under 18 U.S.C. section 922(g)(1), it is unlawful for any person who has been

22 convicted of a felony to possess a firearm or ammunition.  *See* 18 U.S.C. § 922(g)(1).

23 Defendant asks this Court to dismiss Counts Ten and Eleven of his Indictment under

24 the new framework pronounced by *Bruen*, arguing (1) *Bruen* abrogates prior Ninth

25 _____

26 [1] At step one, the government could "justify its regulation by establishing that the challenged law regulates activity falling outside the scope of the right as originally understood." *Bruen*, 142 S. Ct. at 2126 (internal marks and citation omitted).  However, if the historical evidence was inconclusive or suggested the regulated activity was protected, courts moved to step two.  *Id.*  At step two, courts determined the appropriate level of scrutiny depending on whether and to what extent the regulation burdened the "core of the Second Amendment right." *Id.*

27

28

1   Circuit and other case law finding felon-in-possession laws constitutional, and (2)

2   under the new *Bruen* test Plaintiff cannot meet its burden to establish that section

3   922(g)(1) is consistent with "the Nation's historical tradition of firearm regulation."

4   (Mot. at 2-3.)  The Court agrees with Plaintiff, however, that *Bruen* did not effectively

5   overrule Ninth Circuit or Supreme Court precedent upholding the validity of section

6   922(g)(1).  (*See* Opp'n (ECF No. 64) at 1-3.)  Thus, this Court is bound by such

7   precedent and will deny Defendant's motion.

8          Before *Bruen*, the Ninth Circuit relied on *Heller* to repeatedly uphold the

9   constitutionality of laws prohibiting felons from possessing firearms.  *See, e.g.*, *United*

10  *States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (holding that section 922(g)(1)

11  "does not violate the Second Amendment as it applies to Vongxay, a convicted

12  felon"); *Van Der Hule v. Holder*, 759 F.3d 1043, 1051 (9th Cir. 2014) ("§ 922(g)(1)

13  continues to pass constitutional muster"); *United States v. Phillips*, 827 F.3d 1171,

14  1174–75 (9th Cir. 2016) ("[U]nder Supreme Court precedent and our own" the Ninth

15  Circuit must "assum[e] the propriety of felon firearm bans").  This Court is bound by

16  *Vongxay* and its progeny unless they have been "effectively overruled."  *Miller v.*

17  *Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).  "A prior decision is effectively

18  overruled if intervening higher authority has so 'undercut the theory or reasoning

19  underlying the prior circuit precedent' as to make the precedent 'clearly

20  irreconcilable' with the intervening authority."  *Close v. Sotheby's, Inc.*, 894 F.3d 1061,

21  1073 (9th Cir. 2018) (quoting *Miller*, 335 F.3d at 900).  "The clearly irreconcilable

22  requirement is a high standard," and "[i]t is not enough for there to be some tension

23  between the intervening higher authority and prior circuit precedent, or for the

24  intervening higher authority to cast doubt on the prior circuit precedent."  *Id.* (citations

25  and quotation omitted).  *Bruen* requires courts to determine whether a regulation is

26  "consistent with this Nation's historical tradition of firearm regulation."  *Id.* at 2126.  In

27  *Heller*, the Supreme Court affirmed the constitutionality of "longstanding prohibitions

28  on the possession of firearms by felons" and others.  554 U.S. at 626–27.  The

1    Supreme Court did not hold otherwise in *Bruen*, but rather invoked *Heller* in stating

2    the Second Amendment protects the rights of "law-abiding, responsible citizens" to

3    carry arms.[2]  *Bruen*, 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at 635).

4           Consistent with the test pronounced in *Bruen*, the Ninth Circuit in *Vongxay* did

5    not rely on means-end scrutiny in upholding the constitutionality of section 922(g)(1),

6    but instead relied on *Heller*'s statements that "longstanding prohibitions on the

7    possession of firearms by felons" are "presumptively lawful."  *Vongxay*, 594 F.3d at

8    1115, 1118.  The court further noted that "[n]othing in *Heller* can be read legitimately

9    to cast doubt on the constitutionality of § 922(g)(1)," and that *Heller*'s "examination . . .

10   of historical gun restrictions . . . lend[ed] credence to post-*Heller* viability" of the

11   court's pre-*Heller* ruling that Section 922(g)(1) does not violate the Second

12   Amendment.  *Id*. at 1114, 1116.  Specifically, the court observed that although "the

13   historical question has not been definitively resolved," "[d]enying felons the right to

14   bear arms is [] consistent with the explicit purpose of the Second Amendment to

15   maintain the security of a free State . . . [as] [f]elons are often, and historically have

16   been, explicitly prohibited from militia duty," and

17           most scholars of the Second Amendment agree that the right
18           to bear arms was inextricably . . . tied to the concept of a
             virtuous citizen[ry] that would protect society through
19           defensive use of arms against criminals, oppressive officials,
             and foreign enemies alike, and that the right to bear arms
20           does not preclude laws disarming the unvirtuous citizens (i.e.
             criminals) . . . .
21

22   *Id*. at 1117–18 (citations and quotations omitted).

23

24   _____
     [2] Indeed, both the concurring and dissenting opinions indicate that *Heller* remains unaffected by *Bruen*.
25   *See Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (Justice Kavanaugh and Roberts reiterating
     what they perceived as the continuing validity of *Heller*'s presumptively lawful prohibitions by stating
26   that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the
     possession of firearms by felons"); *id*. at 2157 (Alito, J., concurring) ("[n]or have we disturbed anything
27   that we said in *Heller* or *McDonald* about restrictions that may be imposed on the possession or
     carrying of guns"); *id*. at 2189 (Breyer, J. dissenting) (noting that "[l]ike Justice Kavanaugh, I understand
     the Court's opinion today to cast no doubt on . . . *Heller*'s holding" that prohibitions on the possession
28   of firearms by felons are presumptively lawful).

Defendant has attempted to argue that *Bruen* undercut *Heller* by abrogating its ruling on one of the "presumptively lawful" categories, meaning that a historical analysis must be newly conducted for every regulation listed as presumptively lawful in *Heller*.  Justice Kavanaugh's concurrence in *Bruen* instructs otherwise.  Justice Kavanaugh emphasized that the New York law at issue was not the type of law which *Heller* found presumptively lawful; it was an unusual, "outlier 'may-issue' licensing regime" which was used by only handful of states, in contrast to the typical "shall-issue" regimes, which the Justice reiterated, continue to be presumptively lawful. *Bruen*, 142 S. Ct. 2111, 2162–63 (Kavanaugh, J. *concurring*).  Accordingly, *Bruen* should not be read to undermine the established presumptively lawful regulations outlined in *Heller*.

Thus, this Court holds *that Bruen* is not clearly irreconcilable with the reasoning in *Heller* or *Vongxay*.  While some courts have questioned the constitutionality of section 922(g)(1) following *Bruen*, *see, e.g., Range v. Att'y Gen. United States*, 69 F.4th 96, 105–06 (3d Cir. 2023) (holding section 922(g)(1) was unconstitutional as applied to the defendant, whose prior crime was "making a false statement on an application for food stamps"); *United States v. Bullock*, No. 18-CR-165-CWR-FKB, 2023 WL 4232309, at *4 (S.D. Miss. June 28, 2023) (finding that *Bruen* "abrogated Fifth Circuit precedent" and performing a *Bruen* analysis to conclude that section 922(g)(1) was unconstitutional as applied to the particular defendant), this Court is persuaded by the numerous other district courts in the Ninth Circuit that have addressed the same issue post-*Bruen* and have upheld the constitutionality of section 922(g)(1).[3]

---

[3] *See, e.g., United States v. Bulltail*, No. 22-cr-86-BLG-SPW, 2023 WL 3947823, at *4 (D. Mont. June 12, 2023); *United States v. Pineda*, No. 21-cr-00482-AA, 2023 WL 4053583, at *2 (D. Or. June 16, 2023); *United States v. Guthery*, No. 22-cr-00173-KJM, 2023 WL 2696824, at *3-4 (E.D. Cal. Mar. 28, 2023); *United States v. Davis*, No. 21-cr-00206-ADA-BAM, 2023 WL 2505039, at *4 (E.D. Cal. Mar. 14, 2023); *United States v. Kilgore*, No. 21-cr-00277-JLT-SKO, 2023 WL 2505012, at *3 (E.D. Cal. Mar. 13, 2023); *United States v. Barber*, No. 22-cr-00065-SLG-MMS, 2023 WL 2140526, at *1 (D. Alaska Feb. 21, 2023); *United States v. Jackson*, No. 22-cr-01969-TUC-JGZ-JR, 2023 WL 1965424, at *2 (D. Ariz. Feb. 13, 2023); *United States v. Jackson*, No. 22-cr-37-RSL, 2023 WL 1967199, at *3 (W.D. Wash. Feb. 13, 2023); *United States v. Moore*, No. 20-cr-00474-IM, 2023 WL 154588, at *2 (D. Or. Jan. 11, 2023).

1      Defendant tries to further argue that one of the felony convictions he has been

2  convicted of is not an appropriate predicate for 18 U.S.C. 992(g)(1) because there is

3  no historical tradition of disarming someone convicted of cruelty to animals.  (Mot. at

4  10.)  The Ninth Circuit does not draw a distinction between the type of felonies to

5  which section 922(g)(1) applies and instead views all felons as "categorically different

6  from the individuals who have a fundamental right to bear arms."  *Vongxay*, 594 F.3d

7  at 1115.  Defendants are therefore foreclosed from bringing an "as-applied" challenge

8  to section 922(g)(1).  *See Michaels v. Sessions*, 700 F. App'x 757, 758 (9th Cir. 2017);

9  *U.S.A. v. Nevens*, No. CR 19-774-DMG, 2022 WL 17492196, at *3 (C.D. Cal. Aug. 15,

10  2022) (rejecting argument that there was no historical practice of barring non-violent

11  felons from possessing firearms because *Heller* did not draw any such distinction).

12      For these reasons, this Court is bound to find section 922(g)(1) constitutional

13  and deny Defendant's Motion to Dismiss Counts Ten and Eleven.

14      **B. Unregistered Firearm Law**

15      Under 26 U.S.C. § 5861(d), it is unlawful for any person to possess a firearm as

16  defined in 26 U.S.C. § 5845(a)(8) and (f) which is not registered to that person in the

17  National Firearms Registration and Transfer Record.  *See* 26 U.S.C. § 5861(d).

18  Defendant asks this Court to dismiss Counts Thirteen and Fourteen of his Indictment

19  under *Bruen* because firearm registration requirements burden his Second

20  Amendment right to possess firearms and there is no historical tradition of requiring

21  firearms to be registered.

22      As an initial matter, the type of firearms regulated by 26 U.S.C. § 5861(d), and

23  which Defendant is charged with possessing, do not fall within the ambit of the

24  Second Amendment because they are considered "dangerous and unusual weapons."

25  *Heller*, 554 U.S. at 625, 627.  Section 5816(d) only prohibits possession of

26  unregistered firearms as defined by section 5845(a) including "short-barrel shotguns,

27  short-barrel rifles, machineguns, silencers, and destructive devices" not "basic

28  handguns, revolvers, or long guns."  *See United States v. Sredl*, No. 3:22-CR-71 RLM-

7

1   MGG, 2023 WL 3597715, at *3 (N.D. Ind. May 23, 2023).  The Supreme Court in *Heller*

2   recognized that machineguns and short-barreled shotguns are not protected by the

3   Second Amendment because they are "dangerous and unusual weapons" which are

4   "not typically possessed by law-abiding citizens for lawful purposes."  *Heller*, 554 U.S.

5   at 625, 627.  The Ninth Circuit has adopted this reasoning and determined that "there

6   is no Second Amendment right to possess a machine gun."  *United States v. Henry*,

7   688 F.3d 637, 640 (9th Cir. 2012).  And the Ninth Circuit has upheld section 5861 in

8   the face of a second amendment argument post-*Heller*.  *United States v. Hatfield*, 376

9   F. App'x 706, 707 (9th Cir. 2010).

10         As discussed above, *Bruen* does not upset this prior precedent.  Far from

11   overruling *Heller*, *Bruen* expanded and clarified the *Heller* analysis.  *Bruen*, 142 S. Ct.

12   at 2128–29 (noting that the *Heller* court did not engage in means-end scrutiny and

13   instead only engaged in a historical analysis).  In fact, the *Bruen* court reiterated

14   *Heller*'s determination that there is a "historical tradition of prohibiting the carrying of

15   dangerous and unusual weapons."  *Id.* at 2128 (quoting *Heller*, 554 U.S. at 627)

16   (internal quotations omitted).  "Whatever changes *N.Y. State Rifle v. Bruen* brought to

17   the Second Amendment landscape, inclusion of dangerous and unusual weapons in

18   the Second Amendment right isn't one such change."  *Sredl*, 2023 WL 3597715, at *3.[4]

19         For these reasons, this Court is bound to find section 5861(d) constitutional and

20   deny Defendant's Motion to Dismiss Counts Thirteen and Fourteen.

21   ////

22   ////

23   ////

24   ////

25   ////

26

27   _____

[4] Numerous other district courts have made a similar finding.  *See United States v. Danielson*, No. 22-
28   CR-299 (MJD/LIB), 2023 WL 5753621, at *9 (D. Minn. June 2, 2023*), report and recommendation
     adopted*, No. CR2200299MJDLIB, 2023 WL 5288049 (D. Minn. Aug. 17, 2023) (collecting cases).

## IV.    Conclusion

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Counts Ten, Eleven, Thirteen, and Fourteen (ECF No. 55) is DENIED.

IT IS SO ORDERED.

Dated:   **October 12, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – broadbent19cr00155.MTD_10_11_13_14