MICHELE BECKWITH
Acting United States Attorney
DAVID W. SPENCER
JUSTIN L. LEE
NICOLE M. VANEK
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:19-CR-155-DJC |
| Plaintiff, | PLEA AGREEMENT |
| v. | |
| JASON RAYSEAN BROADBENT, | |
| Defendant. | |

### I. INTRODUCTION

**A.    Scope of Agreement**

The Indictment in this case charges the defendant with violations of 18 U.S.C. § 111(a)(1) and (b) – Assault on a Federal Officer Using a Deadly or Dangerous Weapon ("Counts One and Two"); 18 U.S.C. § 924(c)(1)(A) – Discharge of a Firearm During and in Relation to a Crime of Violence ("Count Three"); 18 U.S.C. § 924(c)(1)(A) – Brandishing a Firearm During and in Relation to a Crime of Violence ("Count Four"); 21 U.S.C. § 860(a) – Possession with Intent to Distribute Methamphetamine Near a School ("Count Five"); 21 U.S.C. § 860a – Possession with Intent to Distribute Methamphetamine on a Premises where Children are Present and Reside ("Count Six"); 18 U.S.C. § 924(c)(1)(A) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime ("Count Seven"); 21 U.S.C. § 841(a)(1) – Possession with Intent to Distribute Methamphetamine ("Count Eight"); 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B) – Possession of a Firearm in Furtherance of a Drug Trafficking

Crime ("Count Nine"); 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm ("Counts Ten and Eleven"); 26 U.S.C. § 5861(d) – Possession of an Unregistered Destructive Device ("Count Twelve"); and 26 U.S.C. § 5861(d) – Possession of an Unregistered Short-Barreled Machinegun ("Counts Thirteen and Fourteen"). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Rule 11(c)(1)(C) Specific Sentence Agreement

The government and the defendant agree that a specific sentence would be appropriate in this case. Specifically, the parties agree that the defendant should be sentenced to a term of incarceration of 600 months (50 years), to be served concurrently with the state court sentence imposed in Yolo County Case No. CR-F-15-6998. Consequently, this plea agreement is being offered to the Court pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

Under the provisions of Rule 11(c)(3), the Court may accept or reject the plea agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the Court accepts the plea agreement, the Court will inform the defendant and the government that it will embody in the judgment and sentence the disposition provided for in this plea agreement.

If the Court rejects this plea agreement, the Court shall so advise the defendant and the government, allow the defendant and the government the opportunity to withdraw from the plea agreement, and advise the defendant that if he persists in a guilty plea the disposition of the case may be less favorable to him than is contemplated by this plea agreement.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to Counts One and Two, assault on a federal officer using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b); Count Five, possession with intent to distribute methamphetamine near a school, in violation of 21 U.S.C. § 860(a); Count Eight,

possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); Counts Ten and Eleven, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); Count Twelve, possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d); and Counts Thirteen and Fourteen, possession of an unregistered short-barreled machinegun, in violation of 26 U.S.C. § 5861(d). The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case.

If the Court accepts the plea agreement, the defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), and agrees that he will remain in custody upon the entry of his plea.

B. **Sentencing Recommendation**

The defendant and his counsel will recommend the agreed-upon prison sentence of 600 months. The defendant and his counsel may recommend whatever they deem appropriate as to all other aspects of sentencing.

The defendant understands that the agreed-upon 600-month sentence, if this plea agreement is accepted by the Court, will not start to run until the Court imposes sentence in this case and commits the defendant to the custody of the Bureau of Prisons for service of that sentence. *See* 18 U.S.C. § 3585(a). The defendant further understands that he will not be given any credit toward the service of that 600-month sentence for the time spent in custody prior to the date this Court imposes sentence because that time is being credited against the state sentence he is currently serving in Yolo County Case No. CR-F-15-6998. *See* 18 U.S.C. § 3585(b).

### C. Special Assessment

The defendant agrees to pay a special assessment of $900 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### D. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections

based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects, unless the Court rejects this agreement and the defendant withdraws his plea on that basis as allowed by Rule 11(c)(1)(C).

## III.    THE GOVERNMENT'S OBLIGATIONS

### A.    Dismissals

If the Court accepts this plea agreement under Rule 11(c)(1)(C), the government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation of Plea Agreement), and VII.B (Waiver of Appeal) herein.

### B.    Recommendations

#### 1.    Incarceration Range

The government will recommend the agreed-upon prison sentence of 600 months. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

#### 2.    Acceptance of Responsibility

The government will recommend a two-level reduction in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1(a). This includes the defendant meeting with and assisting the probation officer in the

preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding. The government will not recommend an additional one-point reduction under U.S.S.G. § 3E1.1(b), as the defendant's acceptance of responsibility did not "permit[] the government to avoid preparing for trial and permit[] the government and the court to allocate their resources efficiently." See U.S.S.G. § 3E1.1(b).

### C. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

### D. Dismissal of Counts Carrying Consecutive Mandatory Minimum Sentences

The Indictment charges the defendant with a violation of 18 U.S.C. § 924(c) in Counts Three, Four, Seven, and Nine. Each of these counts requires the Court to impose a consecutive mandatory minimum prison sentence that cannot be run concurrent to each other, or any other count, or to any other term of imprisonment, including the state court sentence imposed in Yolo County Case No. CR-F-15-6998 that Broadbent is currently serving. See United States v. Gonzales, 520 U.S. 1, 11 (1997) ("[T]he plain language of 18 U.S.C. § 924(c) forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal," including an undischarged state prison sentence). In addition, the Indictment charges the defendant with a violation of 21 U.S.C. § 860a in Count Six. This count requires the Court to impose a consecutive prison sentence that cannot be run concurrent to any other count. As part of the plea agreement, the government agrees to dismiss these counts if the Court accepts this Plea Agreement, which will permit the defendant to avoid a mandatory, consecutive prison term for each of these counts.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

As to <u>Counts One and Two</u>, assault on a federal officer using a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b):

1. The defendant forcibly assaulted a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives;

2. The defendant did so while the Special Agent was engaged in, or on account of, his official duties; and

3. The defendant used a deadly or dangerous weapon.

<u>Count One</u> charges the defendant with forcibly assaulting Special Agents James Soper and Jason Slosson. <u>Count Two</u> charges the defendant with forcibly assaulting Special Agent Jon Judkins.

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm.

As to <u>Count Five</u>, possession with intent to distribute methamphetamine near a school, in violation of 21 U.S.C. § 860(a):

1. The defendant knowingly possessed 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine with the intent to distribute it to another person;

2. The defendant knew that it was methamphetamine or some other federally controlled substance; and

3. The possession with intent to distribute took place within 1,000 feet of Christian Brothers High School.

As to <u>Count Eight</u>, possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1):

1. The defendant knowingly possessed 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine; and

2. The defendant possessed it with the intent to distribute it to another person.

As to <u>Counts Ten and Eleven</u>, felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1):

1. The defendant knowingly possessed one or more of the firearms listed below;
2. The firearm had been transported from one state to another or between a foreign nation and the United States;
3. At the time the defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and
4. At the time the defendant possessed the firearm, the defendant knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

<u>Count Ten</u> charges the defendant with possessing the following three firearms at 3972 17th Avenue, Sacramento: (1) a Glock Model 27 .40 caliber semi-automatic pistol, with serial number DKV515; (2) a silver Ruger SP101 .357 caliber revolver, with serial number 573-27701; and (3) a black Ruger LCP semi-automatic pistol, with serial number 371219519. <u>Count Eleven</u> charges the defendant with possessing a black .45 caliber M&P semi-automatic pistol, with serial number HPH0244, at 2231 16th Avenue, Sacramento.

As to <u>Count Twelve</u>, possession of an unregistered destructive device, in violation of 26 U.S.C. § 5861(d):

1. The defendant knowingly possessed a pipe bomb;
2. The defendant was aware that the pipe bomb was an explosive bomb; and
3. The defendant had not registered the pipe bomb with the National Firearms Registration and Transfer Record.

As to <u>Counts Thirteen and Fourteen</u>, possession of an unregistered short-barrel machinegun, in violation of 26 U.S.C. § 5861(d):

1. The defendant knowingly possessed an AR-15 style rifle with no serial number;
2. The defendant was aware that the rifle was: (a) a weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without

manual reloading, by a single function of the trigger, or (b) a rifle having one or more barrels less than sixteen inches in length; and

 3. The defendant had not registered the rifle with the National Firearms Registration and Transfer Record.

Count Thirteen charges the defendant with possessing a loaded black AR-15 style rifle with no serial number and a lightning link. Count Fourteen charges the defendant with possessing an unloaded black AR-15 style rifle with no serial number and a lightning link.

The defendant fully understands the nature and elements of the crimes charged in the Indictment to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

### V. MAXIMUM SENTENCE

**A. Maximum penalty**

As to each of Counts One and Two, the maximum sentence that the Court can impose is imprisonment of 20 years, a fine of $250,000, a three-year period of supervised release, and a special assessment of $100.

As to Count Five, the maximum sentence that the Court can impose is imprisonment of at least ten years and up to life, a fine of $20,000,000, a period of supervised release of at least ten years and up to life, and a special assessment of $100. Count Five carries a ten-year mandatory minimum sentence.

As to Count Eight, the maximum sentence that the Court can impose is imprisonment of at least ten years and up to life, a fine of $10,000,000, a period of supervised release of at least five years and up to life, and a special assessment of $100. Count Eight carries a ten-year mandatory minimum sentence.

As to each of Counts Ten and Eleven, the maximum sentence that the Court can impose is imprisonment of up to ten years, a fine of $250,000, a term of supervised release of three years, and a special assessment of $100.

As to each of Counts Twelve, Thirteen, and Fourteen, the maximum sentence that the Court can impose is imprisonment of up to ten years, a fine of $10,000, a term of supervised release of three years, and a special assessment of $100.

In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### B. Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to five years of additional imprisonment.

## VI. SENTENCING DETERMINATION

If the Court accepts this plea agreement pursuant to Rule 11(c)(1)(C), the defendant understands that the Court must sentence him to a term of 50 years in prison.

Under the provisions of Rule 11(c)(3), the Court may accept or reject the plea agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the Court accepts the plea agreement, the Court will inform the defendant and the government that it will embody in the judgment and sentence the disposition provided for in this plea agreement. In addition, the parties agree that, if the Court does not accept the plea agreement, the defendant and the government have the right to withdraw from the plea agreement.

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty pleas, convictions, and sentence. If the Court accepts this plea agreement pursuant to Rule 11(c)(1)(C), the defendant agrees as part of his pleas, however, to give up the right to appeal the guilty pleas,

convictions, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's convictions and guilty pleas, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's pleas of guilty. The defendant specifically waives his right to challenge the constitutionality of the statutes of conviction, including any appellate claims under *Blackledge v. Perry*, 417 U.S. 21 (1974) and *Class v. United States*, 138 S. Ct. 798, 803 (2018).

In addition, regardless of the sentence the defendant receives, if the Court accepts this plea agreement pursuant to Rule 11(c)(1)(C), the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty pleas, convictions, or sentence imposed in this case.

Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea Agreement) herein.

## VIII.   ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

**[CONTINUED ON NEXT PAGE]**

## IX.   APPROVALS AND SIGNATURES

### A.   Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 7/10/25

ZINO OSEHOBO
Counsel for Defendant

### B.   Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 7/10/25

JASON RAYSEAN BROADBENT,
Defendant

### C.   Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: July 10, 2025

MICHELE BECKWITH
Acting United States Attorney

By: _____
DAVID W. SPENCER
JUSTIN L. LEE
NICOLE M. VANEK
Assistant United States Attorneys

## EXHIBIT "A"
### Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

### *Execution of Search Warrant at 3972 17th Ave, Sacramento; BROADBENT Fires Five Shots at Federal Agents Entering the Residence*

On the morning of November 19, 2015, agents from the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") served a search warrant at 3972 17th Ave, Sacramento, California. Noemi Parra-Tang, the girlfriend of defendant Jayson Raysean BROADBENT, lived at the residence. The search warrant was part of the culmination of a months-long firearms and drug trafficking investigation. Law enforcement also obtained felony arrest warrants for BROADBENT and Parra-Tang prior to serving the search warrant.

When agents initiated execution of the search warrant at 3972 17th Ave, BROADBENT, Parra-Tang, and Parra-Tang's 4-year old daughter were in the same bed in one of the bedrooms. After agents knocked and announced their presence and no one came to the door to answer, agents forced entry into the residence and rushed into the living room shouting "police" and "search warrant." Within seconds, BROADBENT fired five rounds from his Glock handgun in the direction of agents, through the wall separating the living room from his and Parra-Tang's bedroom. Special Agent James Soper, who was engaged in his official duties as an agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, was first in line entering the living room. Agent Soper had taken about four steps in when he heard gunshots and out of his right peripheral vision saw drywall flying away from the wall in front of his face. He took a knee, not knowing exactly where the shots were coming from. Special Agent Jason Slosson, who was also engaged in his official duties as an agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, was next into the living room behind Agent Soper. Agent Slosson heard gunshots and saw debris flying from the wall. He concluded that someone was shooting through the wall. Agent Slosson saw Agent Soper go down and thought he had been shot. Moments after the shots were fired, the agents were given the "get out" signal and all began evacuating the residence. None of the shots that BROADBENT fired hit anyone.

Moments after firing, BROADBENT fled out a back door of the residence. As BROADBENT came up over the fence in the backyard, Special Agent Jon Judkins, who was on the perimeter and was also engaged in his official duties as an agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, saw BROADBENT point his pistol with an extended magazine at Agent Judkins' partner. Agent Judkins' partner did not see BROADBENT as he had his backed turned and was observing a different section of the backyard. BROADBENT then noticed Agent Judkins and aimed his weapon at him. After BROADBENT brandished his firearm at Agent Judkins, Agent Judkins shot BROADBENT five times. BROADBENT was transported to the hospital where he was treated for his injuries. In the backyard, agents recovered the Glock handgun that BROADBENT had fired. The handgun was a Glock Model 27 .40 caliber semi-automatic pistol, with serial number DKV515.

Later that day, agents searched the residence pursuant to the search warrant. In the bedroom where BROADBENT had been sleeping with Parra-Tang and Parra-Tang's daughter, agents found a blue Eddie Bauer bag containing two one-pound packages of methamphetamine. DEA lab testing determined this methamphetamine weighed a total of 882.8 grams net weight and contained 871.4 grams

of pure (actual) methamphetamine. On the bed, agents found a silver Ruger SP101 .357 caliber revolver, with serial number 573-27701. Underneath the bed, agents found a small portable safe. Inside the safe was a black Ruger LCP semi-automatic pistol, with serial number 371219519 and a pipe bomb.

At the time BROADBENT possessed this methamphetamine, Christian Brothers High School was located on the other side of the backyard fence of 3972 17th Ave, within 1,000 feet of the residence.

BROADBENT admits that he knowingly possessed the methamphetamine in the Eddie Bauer bag with the intent to distribute it to another person. BROADBENT further admits that he possessed the Glock Model 27 .40 caliber semi-automatic pistol, with serial number DKV515, the silver Ruger SP101 .357 caliber revolver, with serial number 573-27701, the black Ruger LCP semi-automatic pistol, with serial number 371219519, and the pipe bomb. BROADBENT admits that he knew the pipe bomb was an explosive bomb, and that he had not registered the pipe bomb with the National Firearms Registration and Transfer Record.

BROADBENT admits that the firearms were manufactured outside of California and thus were transported into California from out of state. BROADBENT further admits that he had previously been convicted of a crime punishable by more than one year in prison and that he knew he had previously been convicted of a crime punishable by more than one year in prison.

### *Execution of Search Warrant at 2231 16th Ave, Sacramento (BROADBENT's Residence)*

Agents also served a search warrant at BROADBENT's residence, 2231 16th Ave, Sacramento, on November 19, 2015. In BROADBENT's bedroom, agents found the following:

- In the closet, a backpack that contained the following:
  - Two one-pound packages of methamphetamine. DEA lab testing determined this methamphetamine weighed a total of 878.5 grams net weight and contained 860.9 grams of pure (actual) methamphetamine. The packages were wrapped in saran wrap in a similar manner to the one-pound packages seized from Parra-Tang's bedroom at 3972 17th Ave where BROADBENT had been sleeping.
  - A container with 124 grams net weight of methamphetamine.
  - Two clear plastic bags containing methamphetamine – 38.5 grams and 126.6 grams net weight, respectively.
  - A loaded black .45 caliber M&P semi-automatic pistol, with serial number HPH0244, in the front zippered pouch of the backpack.
  - Loose ammunition under the bags of methamphetamine.
- On the other side of the closet, a Wilson tennis racket bag containing two black unserialized AR-15 style rifles with 9-inch barrels and lightning links to convert them to fully automatic machineguns. One of the rifles had a loaded magazine attached.
- Hanging behind the bedroom door was a blue Eddie Bauer bag with two working digital scales, saran wrap, and a plastic cup with methamphetamine residue. This Eddie Bauer bag appears identical to the bag found in Parra-Tang's bedroom with the two pounds of methamphetamine inside.

BROADBENT admits that he knowingly possessed the methamphetamine found in his bedroom with the intent to distribute it to another person. BROADBENT further admits that he possessed the

PLEA AGREEMENT                                  A-2

loaded black .45 caliber M&P semi-automatic pistol, with serial number HPH0244 and that this firearm was manufactured outside of California and thus was transported into California from out of state.

BROADBENT admits that he possessed the two black unserialized AR-15 style rifles with 9-inch barrels and lightning links (one loaded, the other unloaded); that he knew the rifles shot and were designed to shoot automatically more than one shot, without manual reloading, by a single function of the trigger; that he knew the rifles had a barrel of less than sixteen inches in length; and that he had not registered the rifles with the National Firearms Registration and Transfer Record.

I, Jason Raysean Broadbent, have reviewed the Factual Basis in Exhibit A and adopt it as a true and correct statement of my conduct.

Dated: 7/10/25

JASON RAYSEAN BROADBENT,
Defendant